**Zachary Bernard FITE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–00–00651–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 25, 2001.

Thomas R. Steinmeyer, Houston, for appellant.

Carmen Castillo Mitchell, Houston, for appellee.

Panel consists of YATES, EDELMAN, and WITTIG, JJ.*

## OPINION

LESLIE BROCK YATES, Justice.

Appellant, Zachary Bernard Fite, was convicted by a jury of aggravated robbery and sentenced to twenty years' confinement, enhanced with a prior state jail felony conviction. In two points of error, appellant challenges (1) the legal and factual sufficiency of the evidence and (2) the trial court's denial of his motion to quash the enhancement paragraph. We affirm in part and reverse and remand in part.

### Background and Procedural History

On September 12, 1999, someone rang the doorbell of the complainant's house. The complainant looked through the security monitor and saw a man she later identified as appellant holding a brown envelope. The man stated that he had a special delivery for her husband. When the complainant opened the door, the man pushed her to the floor and demanded "ten grand" and all of her jewelry. He warned that if she did not comply with his demands, she would never see her family again. The assailant pushed the complainant through her house, holding her arms behind her back with such force they began to bleed. When they reached the bedroom, the complainant pressed a panic button, and the sound of the alarm sent the man running from the house. In re-

* Senior Justice Don Wittig sitting by assign-    ment.

sponse to the alarm, Officer Jerry King with the Houston Police Department arrived within five minutes and the complainant gave him a description of the robber.

Meanwhile, Brian Linney and his family were returning from church on a street adjacent to the complainant's street and saw appellant drop some money as he was running. Linney testified he caught up with appellant, told him he had dropped the money, but appellant kept running after responding, "that's not my money." Noticing the police car in front of the complainant's house, Linney told the officer about his conversation with appellant. Linney's description of appellant matched the complainant's description of her assailant.

David Cantu testified that he was about to wash his truck that afternoon when appellant approached. He described appellant as being out of breath, sweaty, with blood spots on his wrist, hands and shirt. When Cantu asked appellant about the blood, appellant tried to hide his hands and brush it off. Cantu testified that he watched appellant use his hat to wipe off the blood and then saw appellant throw the hat into a storm drain.

Deputy McCulloch, with the Harris County Constable's Office, testified that he was on patrol when the dispatcher broadcast a description of the assailant. McCulloch saw appellant on Space Center Boulevard and noticed that appellant fit the description of the assailant. Deputy McCulloch stopped appellant and searched him. Appellant was carrying cash, the complainant's credit card, and a crystal rosary belonging to the complainant.

Officer King transported appellant back to the complainant's house. During the ride to the complainant's house, Officer King testified that appellant mumbled to himself: "Oh, I can't believe I did this . . . ,

I've messed up so many times. Here I go again." Officer King testified that appellant asked: "If I were to give you a confession, what's in it for me?" When the complainant saw the appellant, she positively identified him, stating: "That's him. That's definitely him." The complainant also identified the items found on appellant as her property.

Appellant was charged with aggravated robbery. The jury found appellant guilty and assessed punishment at twenty years' confinement, using one prior state jail felony to enhance punishment. This appeal followed.

## Legal and Factual Sufficiency

In his first point of error, appellant claims the evidence is legally and factually insufficient to support his conviction. When reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex.Crim.App.2000). If a reviewing court determines the evidence is insufficient under the *Jackson* standard, it must render a judgment of acquittal because if the evidence is insufficient under *Jackson*, the case should never have been submitted to the jury. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781. In a legal sufficiency challenge, we do not re-weigh the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000).

In reviewing factual sufficiency, we do not view the evidence "in the light most favorable to the prosecution." *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim. App.1997). Rather we ask whether a neutral review of all the evidence, both for and

against the finding, demonstrates the proof of guilt is either so obviously weak as to undermine confidence in the jury's determination, or, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). We will set aside a verdict for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Wesbrook v. State*, 29 S.W.3d 103, 112 (Tex.Crim.App.2000).

Appellant claims the evidence was legally and factually insufficient to support conviction for the first-degree felony of aggravated robbery. A person commits such an offense if that person commits robbery [1] against a person 65 years of age or older. *See* TEX. PEN.CODE ANN. § 29.03(b) (Vernon 1994). Appellant asserts that the State failed to offer a positive identification, eye witness testimony, or tangible evidence to prove appellant's guilt. We disagree.

The complainant testified she was 65 years of age on the date of the incident. The complainant also testified appellant was not wearing any type of disguise when she saw him through the door's security monitor or when, face to face, he pushed her down, or during the nearly 20 minutes that he rummaged through her house. The complainant testified that appellant held something that looked like a letter opener and that she feared for her life when "he said either he got the ten grand and my jewelry or I would never see my family again." Officer King testified that when he arrived at the scene, the complainant was trembling and shaking violently with black and blue, bleeding bruises up and down both arms.

Appellant claims the complainant's in-court identification of appellant—"I think that's him to the right"—is not a sufficient identification. However, Officer King testified that the "on-the-scene" viewing shortly after the robbery led to a positive identification where the complainant stated "That's him. That's definitely him." Appellant questions the suggestiveness of the complainant's viewing him at the scene following his arrest. "On-the-scene" confrontations have some degree of suggestiveness. *See Garza v. State*, 633 S.W.2d 508, 512 (Tex.Crim.App.1982). However, in *Garza*, the court held that their use is necessary in cases, such as this one, where time is of the essence in catching a suspect and an early identification is aided by the fresh memory of the victim. *Id.* (citing *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)). Here, any suggested inconsistency in the complainant's identification is an issue to be weighed by the jury in its determination of guilt and innocence. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex.Crim.App. 2000).

Further, the jury heard both Linney and Cantu detail appellant's suspicious behavior and demeanor. Both made a positive identification of appellant in court. Their testimony can reasonably be inferred to explain appellant's actions between the robbery and the arrest. In addition, Officer King related appellant's admissions in the police car, wherein appellant stated "Oh, I can't believe I did this."

Appellant further argues that police were unable to find tangible evidence, such as blood, on his hands or clothes when he was arrested. However, the jury could reasonably infer from Cantu's testimony

---

**1.** The offense of robbery is committed if, in the course of committing theft and with intent to obtain or maintain control of the property, a person intentionally, knowingly, or reckless-ly causes bodily injury to another or places another in fear of imminent bodily injury or death. *See* TEX. PEN.CODE ANN § 29.02 (Vernon 1994).

that appellant successfully removed all the blood before his arrest. Additionally, Officer Crouch testified that tangible evidence, including the complainant's credit card and her rosary, were seized from appellant.

After viewing the evidence in the light most favorable to the prosecution, we believe a rational trier of fact could have found the essential elements of the offense of aggravated robbery.

■ Appellant's claim that the evidence is factually insufficient to support his conviction for aggravated robbery is also without merit. In conducting a factual sufficiency review, we only exercise our fact jurisdiction to prevent a manifestly unjust result. *See Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996). We do not find evidence in the record that greatly outweighs the evidence supporting the trial court's judgment. For the reasons discussed above, the jury's decision was not so contrary to the weight of the evidence as to be clearly wrong and unjust.

We conclude that the State presented legally and factually sufficient evidence to the jury to show that appellant committed aggravated robbery. Appellant's first point of error is overruled.

### Penalty Enhancement

■ In his second point of error, appellant claims the trial court erred in denying his motion to quash the enhancement paragraph of the indictment that was based on his prior state jail felony conviction.[2]

Appellant argues that the penalty enhancement in this case is barred by section 12.42(e) of the Texas Penal Code.[3] The Texas Court of Criminal Appeals recently found that section 12.42(e) "specifically bars the use of unaggravated state jail felony convictions punished under subsection 12.35(a) to enhance ... first degree felonies."[4] *Campbell v. State*, 49 S.W.3d 874, 877 (Tex.Crim.App.2001). In this case, the trial court permitted enhancement with use of appellant's prior conviction for possession of less than one gram of cocaine, which is an unaggravated state jail felony punishable under subsection 12.35(a). *See Id.* at 874–75; *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Vernon Supp.2001).

The State urges that although appellant's prior conviction was *punishable* under section 12.35(a), appellant was not in fact *punished* under 12.35(a), but rather under section 12.44(a). Section 12.44(a) is a permissive sentencing provision, allowing a trial court to reduce punishment of a non-aggravated state jail felony to misdemeanor punishment when finding it would better serve the interests of justice. *See* TEX. PEN.CODE ANN. § 12.44(a) (Vernon

---

**2.** The State's brief also references appellant's admission of other offenses during the punishment phase of trial. However, in order to use prior convictions for enhancement purposes, priors need be pled in some form and preferably in the indictment. *Brooks v. State*, 957 S.W.2d 30, 34 (Tex.Crim.App.1997). Here, the indictment only alleged the prior unaggravated state jail felony for enhancement purposes.

**3.** 12.42. Penalties for Repeat and Habitual Felony Offenders.

(e) A previous conviction for a state jail felony punished under Section 12.35(a) may not be used for enhancement purposes under Subsection (b), (c), or (d). TEX. PEN.CODE ANN. § 12.42 (Vernon Supp.2001).

**4.** 12.35. State Jail Felony Punishment.

(a) Except as provided by Subsection (c), an individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days. TEX. PEN.CODE ANN. § 12.35 (Vernon 1994).

Supp.2001).[5] Thus, the State argues, the exception does not apply in this case. The effect of the State's interpretation of the statute would allow imposition of the enhancement provision to a prior state jail felony conviction that had been assessed a lesser misdemeanor punishment, but would grant greater protection to those state jail felony convictions with a felony punishment. We disagree with this interpretation.

■ Other courts have held that the conviction, not the punishment, determines enhancement. *See Arriola v. State*, 49 S.W.3d 374 (Tex.App.—Fort Worth 2000, pet. ref'd) (Where the defendant's prior felony conviction was punished as a misdemeanor under section 12.44(a), the trial court properly treated the prior conviction as a felony for enhancement purposes); *see also Hadnot v. State*, 851 S.W.2d 378, 379 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (appellant's prior conviction was a "felony conviction" for enhancement purposes even though he received a "misdemeanor punishment"). We conclude the conviction, not the punishment, likewise controls the determination whether enhancement is barred. Since appellant's prior conviction was a 12.35(a) state jail felony, enhancement is barred by section 12.42(e).

■ We must next determine whether it was harmless error to allow the jury to consider the enhancement paragraph of the indictment. All errors, with the exception of certain federal constitutional errors labeled as "structural," are subject to a harmless error analysis. *See High v. State*, 964 S.W.2d 637, 638 (Tex.

Crim.App.1998). In this case, the jury was instructed that the minimum penalty, with enhancement, was fifteen years. Without enhancement, the minimum penalty for aggravated robbery is five years. *See* Tex. Pen.Code Ann. § 12.32 (Vernon 1994). Although the sentence assessed—twenty years—is within the permissible range of punishment, we are not convinced that the error did not have a "substantial and injurious effect or influence" on the jury's punishment determination. *See Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App. 2001) (citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); *see also* Tex.R.App. P. 44.2(b). Appellant's second point of error is sustained.

We affirm the trial court's finding of guilt. We reverse the judgment as to punishment and remand to the trial court for a new punishment hearing.

---

**5.** 12.44. Reduction of State Jail Felony Punishment to Misdemeanor Punishment.

(a) A court may punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as punishment for a Class A misdemeanor if, after considering the gravity and circumstances of the felony committed and the history, character, and rehabilitative needs of the defendant, the court finds that such punishment would best serve the ends of justice. Tex. Pen.Code Ann. § 12.44 (Vernon Supp.2001).